## BOARD OF COMMISSIONERS NEW ORLEANS FIRE DEPARTMENT v. CRYSTAL CREAMERY, ET AL.,
Appellant

(January 4, 1926, Opinion and Decree)

*(Syllabus by the Court.)*

1. Louisiana     Digest—Automobiles—Par. 4 (b).

Where a collision occurs at a street intersection between a Hook and Ladder Truck belonging to the Fire Department and on its way to a fire, and an automobile truck engaged in transporting milk for a creamery company, and the evidence shows that the fire truck was sounding its siren horn and ringing its bell as it approached the intersection, the driver of the milk truck will be considered at fault and responsible for the collision unless it can be shown that the driver of the fire truck was guilty of gross carelessness.

(Civil Code, Art. 2315.   Editor's note.)

Appeal from First City Court, Division "A", Hon. W. Alexander Bahns, Judge.

This is a damage suit arising out of a collision between a fire truck and a milk delivery truck. There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

H. B. Curtis, of New Orleans, attorney for plaintiff, appellee.

Milner, Porteous, and W. A. Provosty, of New Orleans, attorneys for defendant, appellant.

WESTERFIELD, J.   The Fire Department of the City of New Orleans, a public board created by Act 58 of 1910, brings this suit for damages in the sum of $107.65 sustained by Hook and Ladder Truck No. 3, as a result of a collision between the said truck and milk delivery truck belonging to the defendant, Crystal Creamery Co., and being driven at the time of the accident by the other defendant Louis Franceques.

The collision occurred at the intersection of Claiborne Avenue and Frenchmen Street at about midday. The fire truck struck the milk truck on the rear right hand side with its front end.

Defendants deny all blame for the accident which they aver to be entirely due to the gross carelessness of the driver of the fire truck.

There was judgment, as prayed for, and defendant has appealed.

Claiborne Avenue is a wide street, with a neutral ground in the center and two car tracks thereon, and has the right of way under ordinary conditions over Frenchmen Street which is much narrower, being of only customary width of ordinary streets. The fire truck was proceeding out Frenchmen Street toward the lake and the milk truck was proceeding down Claiborne Avenue toward Esplanade Avenue as they approached the intersection of Claiborne Avenue and Frenchmen Street. It is the contention of defendants that the fire truck blew no horn and sounded no bell, and did not stop nor slow up as it approached Claiborne Avenue until almost upon the milk truck when the driver made ineffectual efforts to apply his brakes and began ringing his bell and sounding his siren horn. Only two witnesses support this contention, one of them, the driver of the milk truck and a co-defendant herein, and the other his companion, who was riding with him at the time of the accident.

Under Section 8 of Act 58 of 1910 and Art. 1, Sec. 8 of Ordinance 7490 C. C. S., vehicles of the Fire Department are given the right of way in any street, consequently, the fire truck had the right of way over the milk truck. We are reminded by counsel that this right of way will not excuse gross carelessness and we concede the point, but the evidence of gross carelessness is lacking. Neither vehicle stopped before entering the intersection. The driver of the milk truck says he slowed down to ten miles per hour and the driver of the fire truck claims to have decreased his speed to fifteen miles. The fire truck, according to the three firemen who were on the truck and as testified to by two bystanders who witnessed the accident, was making a great deal of noise, ringing its bell and sounding its siren (the siren was going continuously, the firemen say from the time the truck left the engine house). It is a matter of common knowledge that all fire apparatus on the way to a fire make as much noise as possible, indeed, the firemen seem to take much pleasure in attracting attention to their duties. We are convinced that there was no lack of warning, which sound could supply, of the approach of the fire truck. Moreover, two witnesses, in no way connected with the Fire Department, testify that there were shouts of warning to the milk truck by pedestrians. John Maquar testified that "the fire truck was coming out Frenchmen Street and the milk wagon was coming down Claiborne Street and I jumped out in the middle of the street with both hands up and even waved at the man to stop". He was asked:

"Q. Is that the Creamery Company, when you say milk wagon, you mean the Crystal Creamery truck?

"A. I hollered at him as loud as I could, and he came right along, never stopped; the fire truck was coming making enough noise for anybody to hear it, but he paid no attention, it looked like he wanted to beat the fire truck across."

Mrs. R. Jourdan testified that when the fire truck was going down Frenchmen Street the siren was going and "they were making a lot of noise". She was asked:

"Q. Did it (milk truck) cross or attempt to cross in front of the fire truck?
"A. Yes, he crossed right in front. He did not stop."

Our conclusions are that the milk truck was at fault and consequently, the judgment appealed from must be and it is hereby affirmed.